AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>White Garmin GPS<br>Seized as FP&F No. 2023565800003803<br>("Target Device 1") | Case No. '23 MJ2398 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1, incorporated herein by reference.

located in the   Southern   District of   California  , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-1, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 8, U.S.C. § 1324 | Alien Smuggling |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Shawna M. Wilson, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Shawna M. Wilson, Border Patrol Agent, U.S. Border Patrol
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by   telephone   *(specify reliable electronic means)*.

Date:  06/30/2023

*Judge's signature*

City and state:  San Diego, California          HON. Karen S. Crawford, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Shawna M. Wilson, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic devices:

> White Garmin GPS
> Seized as FP&F No. 2023565800003803
> (**"Target Device 1"**)
>
> Silver Motorola Cell Phone
> Seized as FP&F No. 2023565800003803
> (**"Target Device 2"**)
>
> **(Collectively Target Devices)**

the **Target Devices**, as further described in Attachments A-1 and A-2 and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachments B-1 and B-2.

2. The requested warrants related to the investigation and prosecution of Saul Efren CASTRO Valenzuela and Saul Jossimar RENDON-Feliz for attempting to transport and move illegal aliens within the United States. The **Target Devices** are currently in the custody of Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents. This affidavit is intended to show that there is sufficient probable cause for the requested warrants and does not purport to set forth all of my knowledge of the investigation into this matter. Dates and times are approximate.

1

## TRAINING AND EXPERIENCE

4. I have been employed by the USBP since 2019 and am currently assigned to the San Diego Sector Prosecutions Unit. I graduated from the Border Patrol Basic Academy at the Federal Law Enforcement Training Center in Artesia, New Mexico. I am a Federal Law Enforcement Officer within the meaning of Rule 41(a)(2)(C), Federal Rules of Criminal Procedure and have been a Federal Law Enforcement Officer for four years. I am authorized by Rule 41(a) Federal Rules of Criminal Procedure to make applications for search and seizure warrants and serve arrest warrants. I have experience and have received training with respect to conducting investigations of immigration and criminal violations of Titles 8, 18, 19, and 21 of the United States Code.

5. My current duties involve the preparation of criminal and administrative cases for prosecution, including the use of linking related subjects and information via electronic equipment and telephones. In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement, transportation, and harboring of illegal aliens into and within the United States; and, the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by illegal aliens to illegally gain entry or remain in the United States.

6. During my tenure as a Border Patrol Agent, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

7. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work

in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

   8. Maritime human smugglers can also use digital devices such as Global Positioning Systems (GPS), to monitor location, speed and direction. GPS devices allow boat captains travel in the most direct way to their destination through pre-programed waypoints. It is common for GPS to have multiple landing waypoints; Maritime human smugglers can use digital devices to actively monitor the progress of their illegal cargo while the conveyance is in transit. Maritime smugglers can use GPS to direct the human smuggler drivers to synchronize an exact pick up time of their illegal cargo.

   9. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to

make smuggling arrangements, receive instructions, and report their locations after crossing. It is common for alien smugglers to be in contact with co-conspirators weeks to months in advance of an event to recruit drivers and to coordinate the event. It is also common for co-conspirators to continue to contact each other by phone calls, social media, or messaging applications when contact is lost with the driver after an apprehension has occurred.

10. Based upon my training, experience, and consultations with law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

11. This information can be stored within GPS and cellular phones, disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

   a. tending to indicate efforts to smuggle aliens from Mexico into the United States, and transport aliens inside the United States;

   b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

4

    c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

    d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

12. On June 23, 2023, Border Patrol Agent S. Fick, wearing plain clothes, was performing her assigned duties in the Imperial Beach Border Patrol Station's area of responsibility.

13. At approximately 10:35 PM, a United States Coast Guard (USCG) patrol unit advised Agents of a panga style boat traveling north crossing the United States/Mexico Maritime International Boundary heading towards Point Loma, CA. At approximately 11:00 PM, the USCG activated their emergency lights and sirens and intercepted the panga. The Coast Guard officers observed approximately 13 individuals all huddled together and several fuel containers. The USCG then transported the individuals and the panga to Ballast Point.

14. At approximately 12:38 AM, Agent Fick responded to Ballast Point and encountered 13 individuals, including the two defendants, later identified as Saul Efren CASTRO Valenzuela and Saul Jossimar RENDON-Feliz; as well as three material witnesses, later identified as Lester Geovany CUELLAR-Cardona, Jose Miguel SANCHEZ Sanchez and Yadhira TEHUINTLE-Macuixtle and conducted an immigration inspection. All 13 individuals, including CASTRO, RENDON, CUELLAR, SANCHEZ, and TEHUINTLE, stated that they are citizens of countries other than the United States

5

and did not possess the proper immigration documents which would allow them to enter or remain in the United States legally. At approximately 12:50 AM, Agent Fick placed all thirteen individuals under arrest.

15. At the time of arrest, a white Garmin GPS (**Target Device 1**), was found in the boat near the engine in a compartment, and a silver Motorola cell phone (**Target Device 2**) was found in the boat near the engine in a compartment. These items were deemed abandoned property due to no one claiming the devices. In my training and experience, it is common for alien smugglers to abandon property that may contain evidence of the crime. Both of these devices were subsequently seized.

16. At approximately 2:51 AM, Defendant RENDON was read his Miranda rights and was willing to speak without an attorney present. RENDON stated that he illegally entered the United States on June 23, 2023 via boat and that he was aware of it being a crime to come into the United States without the proper documentation. RENDON stated that he made smuggling arrangements via phone call with a cousin of his who lives in Los Angeles, California.

17. RENDON stated that his cousin agreed to pay $12,000 USD in order for him to be successfully smuggled into the United States. RENDON stated that his destination in the United States was Los Angeles, California where he intended to find work. RENDON stated that prior to boarding the boat in Rosarito, Mexico, he had been staying in Tijuana for 10 days. RENDON stated that he was taken to the boat location in Rosarito by a man named of the smuggling organization who told him to get on the boat. RENDON stated that he was on the boat for approximately 3 hours. RENDON stated that he was sitting in the last row of the boat with women. RENDON stated that he did not see who was operating the boat nor knew who was handling the fuel barrels. RENDON stated that he knew how to swim and was not wearing a life jacket. RENDON stated that he feared for his life during the trip as the trip seemed dangerous and that it was windy.

18. Material Witnesses CUELLAR, SANCHEZ and TEHUINTLE stated that they are citizens of countries other than the United States and did not possess the proper immigration documents which would allow them to enter or remain in the United States legally. CUELLAR, SANCHEZ and TEHUINTLE stated that they made smuggling arrangements while in Mexico and each stated that they were going to pay a smuggling fee of between $5,500 to $15,000 USD. CUELLAR, SANCHEZ, and TEHUINTLE stated that they spent between 2 and 3 days at a house. CUELLAR, SANCHEZ and TEHUINTLE stated that on the day of the event, all of the occupants of the boat were taken to the beach in a car in 2 different trips. CUELLAR, SANCHEZ and TEHUINTLE stated that before boarding the boat, they were given life jackets. SANCHEZ and TEHUINTLE stated that once in the boat, they were told to sit down and to keep their heads down. CUELLAR stated that he feared for his life because the boat was moving very fast and that he was wet and cold.

19. CUELLAR, SANCHEZ and TEHUINTLE were shown two photographic lineups. CUELLAR and SANCHEZ were able to positively identify RENDON as the captain of the panga in today's smuggling event.

20. Based upon my experience and training, consultation with other law enforcement officers experienced in human trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that GPS, telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures, and other digital information are stored in the memory of the **Target Devices**. In light of the above facts and my experience and training, there is probable cause to believe that the Defendant was using the **Target Devices** to communicate with others to further illegal entry into the United States. Based on my training and experience, it is also not unusual for individuals, such as the Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer

7

than they claim. Accordingly, I request permission to search the **Target Devices** for data beginning on **May 23, 2023, through June 23, 2023**.

## METHODOLOGY

21. It is not possible to determine, merely by knowing the cellular telephone's or GPS's make, model and serial number, the nature and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. GPS's today can store way point information, that may contain where it was headed and where it has been, but the nature and types of information stored on the GPS cannot be known by merely looking at this device.

22. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

8

23. Following the issuance of this warrant, a case agent familiar with the investigation will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of these warrants.

24. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to these warrants may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

25. Law enforcement has not previously attempted to obtain the evidence sought by these warrants.

//

//

//

//

//

//

## CONCLUSION

26.   Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Devices** will yield evidence of an alien smuggling violation of Title 8, United States Code, Section 1324.

27.   Because the **Target Devices** were seized at the time the defendants arrest and have been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the **Target Devices**. As stated above, I believe that the appropriate date range for this search is from **May 23, 2023, through June 23, 2023.**

28.   Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the items described in Attachment A-1 and A-2 seize the items listed in Attachments B-1 and B-2 using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Shawna M. Wilson
Border Patrol Agent

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 30th day of June 2023.

_____
HON. KAREN S. CRAWFORD
United States Magistrate Judge

10

# ATTACHMENT A-1

PROPERTY TO BE SEARCHED

The following property is to be searched:

White GARMIN GPS
Seized as FP&F No. 2023565800003803
**("Target Device 1")**

Target Device is currently in the custody of the Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

11

## ATTACHMENT B-1

ITEM TO BE SEIZED: White GARMIN GPS

Authorization to search the GPS described in Attachment A-1 includes the search of maps, logs, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the GPS for evidence described below. The seizure and search of the GPS shall follow the search methodology described in the affidavit submitted in support of the warrants.

The evidence to be seized from the GPS will be electronic records, communications, and data such as maps, way points, and logs for the period of **May 23, 2023, through June 23, 2023**:

a. tending to indicate efforts to smuggle aliens from Mexico into the United States, and transport aliens inside the United States;

b. tending to identify maps, way points, coordinates, and storage data used to facilitate alien smuggling and transportation of smuggled aliens;

c. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as landing locations, meeting spots, or delivery points;

d. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

e. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which are evidence of violations of Title 8, United States Code, Section 1324.